# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CHRISTINE DELANEY,**

        **Plaintiff,**

**v.**                                             **Case No: 6:20-cv-2398-DCI**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

---

## MEMORANDUM OF DECISION[1]

**THIS CAUSE** is before the Court on Claimant's appeal of an administrative decision denying her application for disability insurance benefits and supplemental security income.  In a decision dated April 10, 2020, the Administrative Law Judge (ALJ) found that Claimant had not been under a disability, as defined in the Social Security Act, from June 28, 2017, the alleged disability onset date, through the date of the ALJ's decision.  R. 27–28.  Having considered the parties' memoranda and being otherwise fully advised, the Court concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **AFFIRMED**.

### I.       Issues on Appeal

Claimant raises the following argument on appeal:

1)  The ALJ did not properly discount Dr. Birkmire's medical opinion.  *See* Doc. 22 at 14.

### II.      Standard of Review

As the Eleventh Circuit has stated:

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  Docs. 14; 17.

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo.*" *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III.    Discussion

Here, Claimant argues that the ALJ did not properly discount Dr. Birkmire's medical opinion, especially as it relates to Claimant's bipolar disorder. The Court rejects this argument.

At step four of the sequential evaluation process, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c); 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of the treating, examining, and non-examining medical sources. 20 C.F.R. §§ 404.1545(a)(1), (3); 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).[2] The consideration of medical source opinions is an integral part of steps four and five of the sequential evaluation process.

---

[2] Here, in assessing the Claimant's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently balance, can occasionally stoop, kneel, crouch, and crawl, can occasionally climb stairs and ramps, can never

The Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Claimant filed her claim after March 22, 2017,[3] 20 C.F.R. § 404.150c and 20 C.F.R. § 416.920c are applicable in this case. Under these provisions, an ALJ must apply the same factors in the consideration of the opinions from all medical sources and administrative medial findings, rather than affording specific evidentiary weight to any particular provider's opinions. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). The ALJ must consider: 1) supportability; 2) consistency; 3) relationship with the claimant;[4] 4) specialization; and 5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those two factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Supportability relates to the extent to which a medical source has articulated

---

climb ladders, ropes and scaffolds, can never operate a motor vehicle and/or heavy equipment and can never be exposed to unprotected heights and moving machinery parts. She requires a moderate noise work environment, as defined in the DOT and the SCO, Appendix D. She is able to understand and remember simple instructions, make simple work related decisions, and carry-out simple instructions. She cannot perform work which requires a specific production rate, such as assembly line work and/or hourly quota work. She can occasionally deal with changes in a routine work setting, and can occasionally deal with supervisors, coworkers and the public.

R. 21.

[3] Claimant filed her claim on November 13, 2017. R. 15, 27.

[4] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extend of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.[5]  In other words, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record—familiar concepts within the framework of social security litigation.

The ALJ may, but is not required to, explain how the ALJ considered the remaining three factors (relationship with claimant, specialization, and "other factors").   20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) ("The new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.") (quoting *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2017) (per curiam) and citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same)).

Further, where a claimant is diagnosed with bipolar disorder, the Eleventh Circuit has noted that "the ALJ must consider the episodic nature of bipolar disorder."  *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1046 (11th Cir. 2020) (citing *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267 (11th Cir. 2019)).

The ALJ stated the following with respect to Dr. Birkmire's opinion:

> Turning to the discussion of her mental impairments, the claimant has been diagnosed with type I bipolar disorder, ADHD spectrum features (B12F/3-4), persistent depressive disorder, agoraphobia, cannabis use disorder, PTSD, and

---

[5] The regulations provide, in relevant part, that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1)–(2); 416.920c(c)(1)–(2).

borderline personality disorder (B4F/7; B9F/3). Her mental treatment regimen consists of medication and counseling, and she has not required hospitalization or suffered any episodes of decompensation or acute psychosis (B4F/6; B8F). Mental status examinations showed variable disruptions of mood, affect, attention, and concentration, and occasional signs of psychomotor retardation, slurred speech, and hallucinations (B4F/1, 4, 7; B8F/14, 27). However, her more serious symptoms have improved with medication, and many examinations also noted her with normal psychological functioning (Hearing Testimony; B3F/40; B8F/14; B9F/31, 59; B12F/4). Furthermore, she admitted being an "excellent reader" despite her alleged problems with concentration, memory, and understanding, and there was medical evidence of debilitating cognitive deficits or seriously compromised intellectual functioning (Hearing Testimony; B11E/5; B7F/2, 3). In total, the record fails to establish such serious impairment of her memory and/or cognition as to prevent her from performing simple work tasks with only occasional routine changes and social interactions. However, because she sometimes presented slowed psychomotor activity and variable concentration issues, the residual functional capacity also disqualifies work requiring specific productivity quotas.

…

Finally, Dr. Birkman, a psychiatrist, treated the claimant beginning in May of 2017 and assessed a general assessment of functioning (GAF) score of 50 (B7F). GAF scores may reflect problems in social functioning, or symptoms, which may or may not be related to the ability to perform basic work activities. The scores represent a snapshot of the claimant's condition at a given moment. Moreover, the GAF scale was removed from the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, because of perceived lack of reliability and poor clinical utility. For all these reasons, I find the GAF score unpersuasive (20 CFR 404.1527 and 416.927).

Dr. Birkman also assessed a marked limitations on the claimant's activities of daily living, and extreme limitations in social functioning, concentration, persistence, pace, and decompensation episodes, resulting in greater than 4 days absent from work per month (B7F). These limitations are wholly unsupported by the treatment record, which showed no decompensation episodes and no ongoing symptoms or objective signs severe enough to justify marked or extreme limitations in any area of functioning or such extreme absenteeism from work (B1A; B7A; B11E/4-5; B3F/40; B8F/14; B9F/31, 59; B12F/4). Despite support from a treatment relationship, such gross inconsistency with the treatment record renders this opinion unpersuasive.

R. 23–24, 25.

Thus, the ALJ noted that Claimant experiences "good days"[6] and "bad days"[7] that are characteristic of a person who has bipolar disorder.  *See, e.g.*, *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267–68 (11th Cir. 2019) ("We agree with our sister Circuits that people with chronic diseases can experience good and bad days. And when bad days are extremely bad and occur with some frequency, they can severely affect a person's ability to work."); *see also, e.g., Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1106 (11th Cir. 2021).  The Court notes that in reaching his conclusion, the ALJ did not rely only on citations to "good days"; the content of the ALJ's decision shows that the ALJ comprehensively considered Claimant's mental health symptoms. Indeed, the ALJ's citations show that he considered all of Claimant's mental health symptoms, including the more serious ones such as "psychomotor retardation, slurred speech, and hallucinations." R. 24; *see Simon*, 7 F.4th at 1106 (11th Cir. 2021) (finding that the ALJ erred in "only list[ing] [Claimant's] relatively minor symptoms" while not addressing Claimant's more serious symptoms).  Accordingly, the Court finds that the ALJ addressed the episodic nature of Claimant's bipolar disorder.  Claimant's arguments to the contrary essentially ask the Court to reweigh the evidence, which is not this Court's function.  *Winschel*, 631 F.3d at 1178 (11th Cir. 2011).

Having properly considered the episodic nature of Claimant's bipolar disorder, the Court also finds that the ALJ properly discounted Dr. Birkmire's medical opinion.  While Dr. Birkmire opined that Claimant would have to be absent from work for at least four days per month, the ALJ

---

[6] For example, the ALJ noted that Claimant's "more serious symptoms have improved with medication, and many examinations also noted her with normal psychological functioning."  R. 24

[7] For example, the ALJ noted that Claimant "showed variable disruptions of mood, affect, attention, and concentration, and occasional signs of psychomotor retardation, slurred speech, and hallucinations."  R. 24.

found that Claimant "showed no decompensation episodes and no ongoing symptoms or objective signs severe enough to justify marked or extreme limitations in any area of functioning or such extreme absenteeism from work." R. 24.  The ALJ followed this statement with numerous citations to the medical record that he relied upon for his finding.[8]  These citations include Dr. Birkmire's own treatment records (R. 574–575) and the records of other medical providers (R. 480, 660, 689, 701).  Further, the ALJ noted that Claimant's overall treatment was relatively conservative, stating that her "mental treatment regimen consists of medication and counseling, and she has not required hospitalization or suffered any episodes of decompensation or acute psychosis." R. 23–24.   The Court notes that while Claimant argues that the ALJ overlooked treatment visits where Claimant's symptoms were more severe, the ALJ specifically found that "[m]ental status examinations showed variable disruptions of mood, affect, attention, and concentration, and occasional signs of psychomotor retardation, slurred speech, and hallucinations."  R. 24.  The ALJ followed this finding with various citations to the record—including to part of the record that Claimant asserts the ALJ overlooked.  *See, e.g.,* R. 504; *see also* Doc. 22 at 15.

Overall, the ALJ comprehensively viewed Claimant's treatment record—including both favorable and unfavorable facts—and concluded that Claimant's severe symptoms were controlled by medication.  Based on this comprehensive view of the treatment record the ALJ found that Dr. Birmire's opinion, "[d]espite support from a treatment relationship," was unpersuasive due to

---

[8] The thrust of Claimant's argument appears to be that the records cited by the ALJ are plausibly consistent with Dr. Birkmire's opinion.  But whether these records are arguably consistent with Dr. Birkmire's opinion is largely unhelpful in determining whether the ALJ's contrary finding is nonetheless supported by substantial evidence.  When the record supports multiple readings and the ALJ's chosen reading is a permissible one, the Court must affirm; this is true even if the ALJ's chosen reading is preponderated against by a contrary reading.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–1159 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"gross inconsistency with the treatment record."  R. 25.  Thus, the ALJ explained consideration of the required factors of supportability and consistency.  Further, the ALJ went over what is required by identifying his consideration of the treatment relationship.

Accordingly, the Court finds that the ALJ properly discounted Dr. Birkmire's opinion and supported this finding with substantial evidence.[9]  Claimant's arguments to the contrary essentially ask the Court to reweigh the evidence, which is not this Court's function.  *Winschel*, 631 F.3d at 1178 (11th Cir. 2011).

### IV.    Conclusion

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on de novo review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence.  Applying this standard of review, the Commissioner's decision is due to be affirmed.

For the stated reasons, it is **ORDERED** that:

1.      The final decision of the Commissioner is **AFFIRMED**; and

2.      The Clerk is directed to enter judgment for the Commissioner and close the case

**DONE AND ORDERED** in Orlando, Florida on January 6, 2022.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

---

[9] The Court notes that Claimant has made no argument that the ALJ erred in discounting the GAF score Dr. Birkmire assessed.